IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE TUSON,<br><br>  Plaintiff,<br><br>v.<br><br>VINCENT KIEFER,<br>BRANDON EDWARDS, and<br>AMANDA CHOATE,<br><br>  Defendants. | Case No. 23-cv-3913-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Terrance Tuson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Defendants Vincent Kiefer and Brandon Edwards have moved for summary judgment on the basis that Tuson failed to exhaust his administrative remedies against them prior to filing his lawsuit (Doc. 41).[1] Tuson filed a response in opposition to the motion (Doc. 44), and Defendants filed a reply brief (Doc. 45). The Court has determined that a hearing on the motion is not necessary.

### BACKGROUND

  On December 12, 2023, Tuson filed a Complaint alleging that he was denied adequate medical care for his injured hand (Doc. 1). That Complaint was dismissed

---

[1] Defendant Amanda Choate withdrew her affirmative defense of failure to exhaust administrative remedies (Docs. 38, 39).

because Tuson only identified the State of Illinois and the Illinois Department of Corrections as defendants, but he was granted leave to file an amended pleading (Doc. 12). His Amended Complaint (Doc. 17) alleges that on January 9, 2023, he was involved in a physical altercation on the prison yard, which resulted in an injury to his hand and wrist (Doc. 18, p. 2). After the altercation, he was sent to the healthcare unit, but Nurse Amanda Choate failed to properly examine his injury or provide him with any medical care (*Id.*). After leaving the healthcare unit, he was placed in segregation (*Id.*).

The next day, Tuson was unable to close his left hand, and a bone appeared to be pressing against his skin (Doc. 18, p. 2). He requested medical care from Correctional Officer Brandon Edwards, but Edwards refused to provide any care (*Id.*). On January 11, 2023, Tuson requested medical attention from Correctional Officer Vincent Kiefer (*Id.*). He informed Kiefer that he was in excruciating pain, but Kiefer refused to inform medical personnel of Tuson's concerns (*Id.*). On January 12, 2023, Tuson again requested care from Edwards but was again refused medical attention (*Id.*). Tuson later received an x-ray of his hand that confirmed a broken bone (*Id.* at p. 3).

After review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, Tuson was allowed to proceed on the following count:

> Count 1: Eighth Amendment deliberate indifference claim against Amanda Choate, Brandon Edwards, and Vincent Kiefer for failing to provide Tuson with medical care for his injured hand.

(Doc. 18, p. 3).

Paige Long, Chairperson of the Administrative Review Board ("ARB"), stated in an affidavit that the ARB received one grievance regarding the injury sustained to Tuson's hand (Doc. 41-2, pp. 1, 4).

**January 12, 2023 Grievance (#166-1-23):**

On January 12, 2023, Tuson submitted an emergency grievance complaining about an injury to his hand (Doc. 41-3, pp. 15-16). Tuson noted that on January 9, 2023, he was involved in a physical altercation on the prison yard and sustained an injury to his hand and wrist (*Id.* at p. 15). He alleged that internal affairs took pictures of his hand, but medical staff failed to examine his hand. On January 10, 2023, he woke with pain in his hand and an inability to close it (*Id.* at pp. 15-16). He informed C/O Edwards about his injury and requested medical assistance, but he did not receive medical care (*Id.* at p. 16). The next day, he made the same request of C/O Keefe,[2] but medical personnel never arrived at his cell. He noted that on January 12, 2023, he again requested care from C/O Edwards, but as of the writing of his grievance, he had still not received care (*Id.*). Tuson requested proper medical attention, including an x-ray of his hand (*Id.*).

On January 18, 2023, the Chief Administrative Officer ("CAO") reviewed the grievance and expedited it as an emergency (Doc. 41-3, p. 15). On January 19, 2023, the grievance officer reviewed the grievance and forwarded it to the healthcare unit for review (*Id.* at p. 14). On June 8, 2023, Connie Dolce, RN, submitted a memo to the grievance officer regarding the grievance (*Id.* at p. 17). Dolce noted that Tuson was seen in the healthcare unit on January 13, 2023, and received x-rays on January 19, 2023 (*Id.*). On January 19, 2023, Tuson was sent to Carbondale Memorial Hospital for treatment of a fracture in his hand and placed in a plaster stint (*Id.*). On January 26, 2023, he had an appointment with an off-site orthopedic doctor (*Id.*).

In response to the healthcare unit's memo regarding Tuson's medical care, the grievance officer deemed the grievance moot (Doc. 41-3, p. 14). On July 19, 2023, the CAO concurred with the grievance officer's decision (*Id.*). The grievance was returned to Tuson, although a date of receipt is not listed.

---

[2] Tuson originally identified Vincent Kiefer as "John Keefer" (Doc. 18).

> On August 7, 2023, Tuson marked the grievance for an appeal to the ARB (Doc. 41-3, p. 14). A stamp on the grievance notes that the grievance was received by the ARB on August 23, 2023 (*Id.*). On September 21, 2023, ARB member Ryan Nothnagle reviewed the grievance and returned the grievance to Tuson as untimely received (*Id.* at p. 13). Specifically, Nothnagle noted that the grievance was received 30 days after the date of the CAO's decision and was untimely (*Id.*).

Defendants argue that Tuson failed to exhaust his administrative remedies because he failed to submit his grievance to the ARB in a timely fashion. In her affidavit, Long stated that Tuson's grievance was procedurally defective because the grievance was received by the ARB more than 30 days after the warden's decision (Doc. 41-2, p. 4). Because the grievance was procedurally defective, the ARB never ruled on the merits of Tuson's grievance. As a result, Defendants argue the grievance was never fully exhausted.

In response, Tuson argues that he timely submitted his grievance to correctional staff to mail to the ARB (Doc. 44, p. 4). He also submitted an affidavit supporting his arguments (*Id.* at pp. 20-22). Tuson argues that he submitted his grievance on August 7, 2023, but due to staff malfeasance or the ARB's own actions, the grievance was not received until after the deadline (*Id.* at pp. 4, 21). Tuson also argues that the grievance officer found his grievance moot because he had already received the medical care he sought by the time the grievance was reviewed (*Id.* at p. 10). Tuson argues that the grievance was fully resolved, and he did not have to appeal the grievance to the ARB (*Id.* at pp. 10, 22). Finally, Tuson argues that he submitted other grievances regarding his medical care that counselors and grievance officers failed to process (Doc. 44, pp. 3, 15).

He contends that he submitted additional emergency grievances on both January 10 and January 11, 2023, as well as additional non-emergency grievances (*Id*. at pp. 15-17, 20-21).

In their reply brief, Defendants dispute that Tuson submitted any additional grievances regarding medical treatment for his hand. They offer Tuson's cumulative counseling summary which documents interactions between Tuson and his counselors (Doc. 45-1). The cumulative counseling summary documents the receipt of Grievance #166-1-23, from its receipt on January 17, 2023, through its return by the grievance officer (*Id*. at pp. 4-5). An entry dated July 20, 2023, notes that the grievance officer completed review of the grievance and sent a copy to Tuson through the institutional mail (*Id*. at p. 4). The cumulative counseling summary also notes that on January 12, 2023, Tuson was seen on tour by his counselor, but nothing in the entry indicates that Tuson attempted to submit a grievance on that date (*Id*. at p. 5). Nor do any of the additional entries in January indicate receipt of additional grievances regarding his medical care.

Defendants also dispute that Tuson timely submitted his grievance to the ARB. They argue that the Illinois Administrative Code requires that grievance appeals must be received by the ARB within 30 days of the CAO's decision. They also assert that there is no evidence that Tuson placed an appeal in the prison mail system on August 7, 2023, and, if he had, it would have been received by the ARB before the 30 day deadline. They argue that Tuson's signature and date on the appeal do not substantiate his claim that he mailed the grievance on the date in question because his signature only certifies that he is appealing the decision on that date, not that he is submitting the grievance in the mail on the date.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Tuson was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the

names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the

appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## Discussion

Defendants bear the burden of proving that Tuson failed to exhaust his administrative remedies. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). In this case, they do not dispute that Tuson filed a timely grievance about his request for treatment. They only dispute that Tuson fully exhausted that grievance with the ARB because the grievance was received by the ARB more than 30 days after the CAO's final ruling on the grievance.

IDOC's inmate grievance procedures require that "the appeal must be received by the [ARB] within 30 days after the date" of the CAO's decision. 20 Ill. Admin. Code §504.850(a). The CAO signed his concurrence to Tuson's grievance on July 19, 2023 (Doc. 41-3, p. 14). The counseling records indicate that on July 20, 2023, the grievance response was placed in the institutional mail to Tuson (Doc. 45-1, p. 4). Tuson contends that he submitted the grievance to staff on the date he signed his notice of appeal, August 7, 2023 (Doc. 41-3, p. 14). But Defendants argue that Tuson's contention of a timely submission is unlikely because, if he had submitted the grievance as stated in his affidavit, the ARB would have received it in a timely manner. They note that Tuson dated another grievance for appeal on January 11, 2024, and it was received by the ARB a week later, on January 18, 2024 (Doc. 41-3, pp. 2, 7). Tuson's January 12, 2023 grievance was received by the ARB approximately three weeks after the date on his appeal. Defendants also assert that Tuson's argument, that he did not have to appeal his grievance to the ARB because he had already received the relief he sought, undermines his testimony that he submitted it in a timely manner.

Although Defendants argue that the ARB did not receive the grievance before the expiration of the 30 days for an appeal, they fail to offer any evidence to suggest that Tuson did not submit his grievance to the ARB in a timely fashion. They point out that a subsequent grievance submitted at a later date arrived at the ARB within seven days, seemingly calling into question Tuson's mailing date. But Defendants fail to offer any evidence that a grievance submitted in August 2023 would have arrived within the same time frame. In fact, they offer no evidence to explain how grievances are submitted to the

ARB from the prison. Tuson stated in his affidavit that the grievance was submitted through the prison's internal mailing system on August 7, 2023 (Doc. 44, p. 21). His grievance appeal is similarly marked as submitted on August 7, 2023. There is simply no evidence in the record to suggest that the grievance was not submitted on the same date that Tuson signed it. The only evidence in the record suggests that Tuson submitted the grievance in the mail to the ARB on August 7, 2023. Although Defendants argue that the grievance rules require that the grievance be *received* by the deadline, the Seventh Circuit has routinely applied the "mailbox rule" to inmate grievances. *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013)("And though the defendants would like us to presume that [Section] 504.850 and the ARB's own procedures do not recognize the 'mailbox rule,' they offered no support (and still don't) for the proposition."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner had filed a timely appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB).

The evidence in the record suggests that Tuson submitted the grievance in a timely fashion, allowing enough time for it to be received within the 30 days required by the administrative code. Tuson had no control over the prison mail system and did all that he could to submit the grievance in a timely fashion. Defendants fail to demonstrate otherwise. Thus, the grievance was timely submitted and should not have been rejected by the ARB as untimely.

Further, the Court finds that Tuson did not have to exhaust his grievance further after receiving a response from the grievance officer. As Tuson points out, by the time the grievance officer received a response from the healthcare unit, he had already received

Page **11** of **12**

the relief he requested. Tuson's grievance sought proper medical attention, including an x-ray of his hand and wrist (Doc. 41-3, p. 15). According to Dolce's response from the healthcare unit, Tuson received an x-ray and care, including a plaster splint and an orthopedic appointment, in January (*Id.* at p. 17). Because Tuson had already received the care he sought, the grievance was deemed moot (*Id.* at p. 14). The Illinois Administrative Code only requires an appeal to the ARB if "the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction." 20 Ill. Admin. Code § 504.850(a). Here, Tuson's grievance had been fully resolved by the time the grievance officer issued his recommendation, and there was no relief left to seek from the ARB. Nothing in the Code required a further appeal to the ARB. Thus, the grievance was fully resolved and exhausted with the grievance officer's response.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on the issue of failure to exhaust administrative remedies (Doc. 41) is **DENIED**.

**IT IS SO ORDERED.**

DATED: July 9, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**